IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCUS H. SANDERS,

      Plaintiff,

v.                                                                 CV 16-82 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      Marcus Sanders applied for a period of disability and disability insurance benefits ("DIB") on December 24, 2011, alleging disability beginning on April 30, 2002, based on cervical degenerative disc disease, chronic migraines, generalized anxiety disorder, numbness in the arms and hands, and arthritis. (Administrative Record "AR" 92-93.) After Sanders's application was denied at all administrative levels, he filed the instant motion to remand. (Doc. 13.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 20) and Sanders filed a reply (Doc. 22). For the reasons explained below, I grant Sanders's motion to remand and remand this case for further administrative proceedings consistent with this Order.

**STANDARD OF REVIEW**

      When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. § 404.1520(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. § 404.1520(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's

RFC with the functional requirements of his past relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. § 404.1520(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. § 404.1520(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

**FACTUAL BACKGROUND**

Sanders is a forty-nine-year-old man with a high school education and a certificate in automotive technology. (AR 92, 220.) Sanders claims disability beginning on April 30, 2002, based on cervical degenerative disc disease, chronic migraines, generalized anxiety disorder, numbness in the arms and hands, and arthritis. (AR 93.) Sanders alleges, among other things, that he suffers from anxiety, predating his date last insured of December 31, 2002.

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

In a Progress Note dated November 8, 2005, treating physician Amy Schmidt, M.D., noted that Sanders had longstanding social anxiety. (AR 463.) Dr. Schmidt continued serving as Sanders's treating physician and completed several medical statements on July 28, 2014. Dr. Schmidt filled out a Medical Assessment of Ability to Do Work-Related Activities (Physical),

which directed her to "consider [Sanders's] medical history and the chronicity of findings as from 2002 to current examination." (AR 391 (emphasis removed).) Dr. Schmidt also completed a Medical Assessment of Ability to Do Work-Related Activities (Non-Physical), in which she found that Sanders has marked limitations maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerance; maintaining physical effort for long periods without needing to decrease activity or pace or to rest intermittently; sustaining an ordinary routine without special supervision; working in proximity to or in coordination with others without being distracted by them; and completing a normal workday and workweek without interruptions from pain or fatigue based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 392.) Additionally, Dr. Schmidt assessed that Sanders has slight limitations making simple work-related decisions. (*Id.*)

The ALJ held a hearing on August 27, 2014, at which Sanders, represented by an attorney, testified, as well as Sanders's wife and an impartial vocational expert ("VE"). Sanders testified that, prior to December 31, 2002, he experienced anxiety when around others and that he had "severe problems with . . . authority and the judging of [his] physical limitation." (AR 71.) Sanders stated that he began taking anti-anxiety medication in 1998 after it was prescribed by his neurologist, Dr. Shibuya, and later by treating physician Terrence Reagan, M.D. (AR 72, 79-80.)

The VE testified that a person like Sanders, who was limited to sedentary work with no overhead reaching, would be able to find other work, based on the VE's experience. (AR 89.) In response to a question from Sanders's attorney, the VE stated that a person like Sanders, who was limited to sedentary work and experienced marked limitations in maintaining concentration

and attention or performing activities within a schedule—meaning that the person would be off-task 12% of the day—would not be able to find employment. (*Id.*)

After the ALJ issued her decision, but before the Appeals Council issued its decision, Sanders visited Emily Driver Moore, Ph.D., for a psychological evaluation on September 25, 2015. (AR 7.) Dr. Moore reviewed records from Sanders's current treating physician, Amy Schmidt, M.D., his previous treating physician, Terrence Reagan, M.D., and additional physicians, including, Carlos Esparza, M.D., Edward Alter, M.D., Robin Hermes, M.D., and Claude Gelinas, M.D. (*Id.*) In addition to reviewing records, Dr. Moore conducted a clinical interview, a mental status examination, the Montreal Cognitive Assessment, the Beck Depression Inventory, the Generalized Anxiety Disorder – 7 Questionnaire, and the Personality Assessment Screener. (AR 14.) Based on all of this information, Dr. Moore diagnosed Sanders with chronic post-traumatic stress disorder ("PTSD"), provisional social anxiety disorder, rule out bipolar disorder II, antisocial and/or borderline personality features, and chronic daily headaches by history. (AR 16.) Dr. Moore went on to conclude that

> [i]t is clear from his history that Mr. Sanders' job performance was negatively affected by his reactivity to authority, his aggressive behavior, and his interpersonal distrust and hostility long before his cervical fusion surgeries. . . . His psychiatric difficulties . . . appear to have impaired his ability to function adequately in an employment setting long before [2001], as evidenced by his . . . being terminated from every subsequent position he held due to interpersonal conflicts and resistance to authority. . . . It appears that his anxiety symptoms have worsened over the years, possibly exacerbated by the accumulating challenges of chronic physical pain . . . .

(AR 17 and Doc. 13 Ex. 1 (missing page 11 of Dr. Moore's report).)

Dr. Moore completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) on October 24, 2015, that considered Sanders's "medical history and the chronicity of findings as <u>from 2002 to current examination</u>." (AR 19-20 (emphasis in original).) Dr. Moore

assessed Sanders with slight limitations understanding and remembering very short and simple instructions, carrying out very short and simple instructions, making simple work-related decisions, and being aware of normal hazards and taking adequate precautions. (*Id.*) She assessed Sanders with moderate limitations remembering locations and work-like procedures, asking simple questions or requesting assistance, and responding appropriately to changes in the work place. (*Id.*) Finally, Dr. Moore assessed Sanders with marked limitations understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods of time, performing activities within a schedule and being punctual and maintaining regular attendance within customary tolerance, sustaining an ordinary routine without special supervision, completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior and adhering to basic standard of neatness and cleanliness, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of others. (*Id.*)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on October 27, 2014, and found that Sanders was not disabled prior to December 31, 2002. (AR 46.) The ALJ clarified from the outset that her analysis focused on the period from April 30, 2002—the alleged onset date—through December 31, 2002—Sanders's date last insured. (AR 38.) At step one, the ALJ found that Sanders had no substantial gainful activity after his alleged onset date. (AR 40.) At step, the ALJ determined

that, prior to December 31, 2002, Sanders suffered from the severe impairments of status post fusion at C5-C6 with eventual non-union and chronic headaches. (*Id.*) The ALJ further determined that Sanders's alleged anxiety disorder was not a medically determinable impairment during the period at issue and could not be considered in the disability determination, in part because the record contains no mention of anxiety until 2013. (AR 41.) At step three, the ALJ concluded that Sanders did not have an impairment or combination of impairments that met or equaled a Listing. (*Id.*)

The ALJ then found that Sanders retained the RFC to perform sedentary work, except that he could never engage in overhead reaching. (*Id.*) In making this finding, the ALJ reviewed Sanders's testimony, noted that there is minimal objective medical evidence from the period at issue, and summarized those records. (AR 41-43.) The ALJ gave "[l]ittle weight" to Dr. Schmidt's opinion because "it was given over eleven years after the period at issue." (AR 44.) Based on this RFC, the ALJ concluded that Sanders could not perform any of his past relevant work. (AR 45.) Finally, relying on the VE's testimony that a person such as Sanders who was limited to sedentary work with no overhead reaching could find other work, the ALJ determined that Sanders could perform other work in the economy (AR 45-46), and, therefore, was not under a disability prior to December 31, 2002 (AR 46).

The Appeals Council denied Sanders's request for review on January 10, 2016. (AR 1.) The Appeals Council reviewed the evidence from Dr. Moore and found that it was about a later time and therefore did not affect the ALJ's decision through December 31, 2002. (AR 1-2.)

## DISCUSSION

Sanders argues that, among other errors, the ALJ improperly rejected the opinion of treating physician Dr. Schmidt and that the Appeals Council erred by failing to consider the

evidence from Dr. Moore as pertinent, rendering the ALJ's decision unsupported by substantial evidence. The parties agree that Dr. Schmidt is and was, as early as 2004, Sanders's treating physician. Because I agree with both of these claims of error, I find that the Commissioner committed legal error as described below and do not reach any additional claims of error.

When confronted with the opinion of a treating physician, an ALJ must complete a sequential two-step process for evaluating that opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. *Id.* A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374180, at *2 (July 2, 1996)). If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process. *Id.* In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. § 404.1527(c) and must "give good reasons, tied to the factors specified . . ., for the weight assigned." *Id.* According an opinion little weight is tantamount to rejecting the opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" with "effectively rejecting" a medical-source opinion).

Sanders contends that the ALJ failed to conduct the controlling weight analysis under *Krauser* and impermissibly collapsed the two-step analysis into a single step. (Doc. 13 at 18-19.) The ALJ's only discussion regarding Dr. Schmidt's opinion is that she gave the opinion little weight because it was rendered more than a decade after Sanders's date last insured. (AR 43-44.)

After determining that Dr. Schmidt's opinion was not entitled to controlling weight, the ALJ was required to apply the factors in 20 C.F.R. § 404.1527(c) to determine how much weight to give the opinion. These factors include 1) the examining relationship; 2) the treatment relationship, including length, frequency, and nature of the relationship; 3) supportability of the opinion with medical evidence; 4) consistency of the opinion with the record as a whole; 5) specialization of the physician; and 6) other factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c). While the Commissioner is correct that the ALJ is not required to discuss every factor in every case, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), the ALJ is required to consider every factor. Here, the ALJ discussed none of the factors and it is unclear whether she considered them.

"[A] treating physician may provide a retrospective diagnosis of a claimant's condition." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990). Dr. Schmidt began treating Sanders no later than 2004, purports to have reviewed records from Sanders's previous treating physician, and notes early on that Sanders had been treated for social anxiety disorder for quite some time prior to their treatment relationship. Additionally, Dr. Schmidt's opinion contains a retrospective analysis, as evidenced by the direction to consider Sanders's impairments from 2002 forward.

Under these circumstances, and in light of the ALJ's failure to analyze even one of the requisite factors, I find that the ALJ committed legal error by failing to adequately apply the treating physician analysis laid out in *Krauser* and failing to provide good reasons for the weight assigned to Dr. Schmidt's opinion.

While the ALJ's failure to properly conduct the treating physician analysis with respect to Dr. Schmidt is sufficient, in itself, to remand the case, I also address the issue of Dr. Moore's opinion, as it may helpful on remand.

When the Appeals Council evaluates whether the ALJ's decision is supported by "the weight of the evidence currently of record," 20 C.F.R. § 404.970(b), it must consider whether the newly submitted evidence is "new," "material," and "chronologically pertinent." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003); *Krauser*, 638 F.3d at 1328. Evidence is "new" when it is not "duplicative or cumulative," "material" when "there is a reasonable possibility that [it] would have changed the outcome," and "chronologically pertinent" when it "relates to the period before the ALJ's decision." *Threet*, 353 F.3d at 1191. "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." *Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004) (alteration removed) (quotation omitted).

The medical source statements filled out by Dr. Moore all clearly request an evaluation from 2002 forward. Dr. Moore's report indicates that she reviewed records from Sanders's treating physicians, going back before 2002. In her statement, Dr. Moore writes that Sanders's "psychiatric difficulties . . . appear to have impaired his ability to function adequately in an employment setting long before [2001]" and have worsened over the years. (AR 17 and Doc. 13 Ex. 1 (missing page 11 of the Report).)

Dr. Moore's opinion meets the three part test: the evidence is new—there are no other psychological statements in the record; the evidence is material—Dr. Moore's opinion could establish that an anxiety disorder was a severe medical impairment prior to 2002 and must be

included in his RFC; and the evidence is chronologically pertinent—the instructions and record review clearly indicate that Dr. Moore's opinion dated at least as early as 2002.

The Commissioner's argument against consideration of Dr. Moore's opinion is that the opinion has no bearing on Sanders's condition prior to his date last insured. As discussed above, this argument is not persuasive.

The Appeals Council committed reversible error by failing to consider Dr. Moore's opinion.

## CONCLUSION

The Commissioner's decision in this case is reversed and remanded for further proceedings consistent with this Order. As discussed above, the ALJ committed legal error by failing to properly apply the treating physician analysis to Dr. Schmidt's opinion, and the Appeals Council erred by failing to consider the qualifying new evidence submitted from Dr. Moore. On remand, the ALJ will consider Dr. Moore's statement and will analyze Dr. Schmidt's opinion in accordance with *Krauser*.

It is so ordered.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.